Good morning. If it pleases the court, I will incorporate my 924C by reference and not argue that and rely on the brief. You are representing? I'm representing Winston Oliver, Judge. Mr. Oliver. Yes, thank you. And the issue is plain and simple a brutal issue which all parties recognized early on in the trial. A motion was made to sever the defendants and there was some considerable discussion as to how they could possibly try the defendants together and neutralize co-defendant Brown's statement when he mentions Mr. Oliver. And there was discussion about using the term getaway driver and or driver, either of which was acceptable to the government attorney. Mr. Young, a fine attorney he's doing, preferred either of those terms because he knew how the evidence would develop and the evidence would develop that Oliver was the driver. When the attorney for Mr. Oliver suggested simply excising any reference to the co-defendant for Mr. Brown's statement, that suggestion was quickly brushed away. The government agrees with me on what the law and the problem are. I will quote from their brief in saying, even if the moving defendant's name is redacted, severance is required if it is clear that a particular defendant is implicated. But doesn't the statement have to facially incriminate the defendant? Yes, that's the law. And I would agree that at the time they determined they would use the term driver, it did not facially implicate the defendant. But what they do factually is this. In one of the very first witnesses, a police officer, they talk about a crime stoppers report which identified Oliver as the, quote, getaway driver. That witness then shows a photograph to the jury of Oliver, the getaway driver. Soon after, police identify a blue Ford Explorer as Mr. Oliver's vehicle. Tina Hancock, former evidence, isn't that perfectly permissible? You know, I think there's some case law to suggest it is. I think this case is different because all neutrality is removed from the term driver by the time you get to the state. But isn't there, and doesn't, we don't live in artificially constricted universes and isn't the government entitled to at least tell the story of what happened here and when it puts on its evidence? Yes, it is entitled. And of course, armed robberies are generally involved two people, or very often. One person who drives the getaway car and another person who actually goes in and commits a robbery. And this often happens. The government be able to tell that story Yes. Through its evidence, as long as Brown's statement doesn't mention Oliver by name, it's considerably more muted if it doesn't mention Oliver by name. And there's always going to be cases where you can somehow link up a redacted or modified confession. Yes, the government is entitled to offer their proof any way they see fit. I don't argue with that. But when you're trying... It's kind of hard to avoid mentioning a driver because Mr. Brown didn't exactly get away on foot. Oh, yes, and I think it's obvious to the jury that somewhere there's a driver. And the government knows its evidence is going to establish through five or six witnesses that Mr. Oliver was the driver. When Tina Hancock testifies that he told her he was the driver, Mr. Young comes back on redirect and said, but didn't he tell you he was the driver? And she almost exasperated. Says, yes, yes, he was the driver. They clearly drive home that point. So my point is, then you pick another term if you want a neutral term. A couple of other points here, I think, and that is, you know, whether we're talking about a motion to sever here. Yes. And that's committed to a district court's discretion. And you can hardly blame a district court by saying these two people really ought to be tried together. And they were they were indicted together. They participated in the same event, which was to rob this fuel truck stop. And just as a practical matter, given the close factual connections between what they were doing, it would seem odd to sever these trials. And then in addition, you know, it isn't just Brown's confession that implicates Mr. Oliver. I mean, the more damaging testimony, in a way, is Tina Hancock's description of the confession and Daniel Oliver's implication. Right. So why take the chance to cross examine both of them? But the only direct evidence is Mr. Brown's statement. And you don't have a chance to cross examine him. So why would the district court take a chance? The government knew driver was not going to be a neutral term when they decided to use that term. Well, it was a lot better than Oliver, wasn't it? Yes. Accomplice would have been better. Accomplice would have been neutral, although I think it's generally sort of a damning phrase. I don't think you'd be up here saying the same thing about accomplice. Oh, perhaps, perhaps. But the point is, driver was certainly not neutral, and the government knew it wasn't going to be neutral. What's wrong with driving a car? Not when you use every other witness to say driver, driver, driver, so that when the statement's made and says driver, they look right at Oliver. They have to tell the story of the crime. The witnesses can't pretend that there wasn't a driver on the scene. Then use another term, is all I'm saying. What did you offer? I was not the trial attorney. Oh, that's not good enough. I would have objected to some of this evidence coming in. What did the trial counsel offer? He asked the court to excise reference to Brock. That would have truly left it neutral. I just think, in theory, it started out okay. The way it was done flies in the face of Bruton, and it makes a mockery of neutrality. Thank you. Mr. Bodner? Didn't the questioning stop at that point? It stopped at that point on that encounter. Then, several days later, Detective Ellett came back with some new warrants, Virginia charges this time. Mind you, Mr. Brown was originally arrested on a Virginia robbery charge, came back with three new warrants, and sees him at the Pamunkey Jail, where he's been transported, because I guess this is the jurisdiction of trial. Detective Ellett arrives at about 12 midnight, or thereabouts. Isn't there some circuit precedent, I seem to recall it, that indicates that serving of a warrant or serving of a charge is not interrogation under Rhode Island V.N.S.? You're correct, Your Honor, and that brings us to the argument, really, because we're suggesting that there's more to it than simply service of the documents that caused Mr. Brown to open up at this point, and those factors are the following, and I think these are different. This distinguishes this case from the Blake case that counsel cites in their brief. Did the district court hold a hearing on this? There was a suppression hearing, Your Honor. Was the manner in which the warrants were served explored? I don't remember that it was developed to the extent that I've argued it to you, no, but there were facts that were developed and are in the record. Has the argument been waived? I would prefer to think not, because... Let's suppose we think it has. Yes, sir. Let's go to the Bruton question in a minute. If Oliver made a statement, would it have been okay to redact all instances of Defendant Brown's name and replace his name with the words, the shooter? I would hope not. That wouldn't be okay? It'd be okay to describe the conduct of this defendant as the driver, but not the conduct of the other defendant as the shooter? Well, to suggest that he is the shooter? Yeah. Well, you're suggesting this guy is the driver. I mean, you're not naming him. You're replacing his name with the descriptor. Well, the government is. The government is. Yes, sir. With the descriptor, the shooter. Well, let me be out front with the court. This was not our motion to sever, but to try to address Your Honor's concern. Excuse me. It was the government's suggestion that these terms, getaway driver in the first instance, be used for Mr. Oliver. For Mr. Brown to be described as the shooter, I think, would be fatal to his efforts to try the case. All right. I'll have to pick up where I left off, Your Honors. Excuse me. So, I believe that what's different in this case from the Blake case cited by the government is, Your Honor, suggests that the service of process alone is not sufficient to say that that opens the door for a statement. In this case, Detective Ellett approached Mr. Brown at 12 o'clock at night to serve the documents. They had to move him to another place to be debriefed. When he was being debriefed, the detective went to the bathroom. He had a tape recorder with him. He secretly turned it on there, flushed the toilet, so that nobody could hear the beeping noise, and reminded the court that my client was 21 years old at the time of the interrogation, and then approached him and let him open up at that point. So, what I'm suggesting is that there are other factors here that indicate that when Detective Ellett chose this time of night, actually 1 o'clock in the morning when the interrogation began to take place, that he was exploiting this opportunity to try to have Mr. Brown open up and waive his right at that point. Knowing that he's been in jail for two days now, knowing that he's going to have counsel, and nowhere is it said, and this folds into my argument relative to the Sixth Amendment right, nowhere is it indicated to Mr. Brown that he's going to have the right to have counsel outside of the interrogation who could advise him as to the benefits of whether or not he even wants to enter into. But he was Mirandized. He was Mirandized, and I'll concede the point that he's told, you have the right to have an attorney present during questioning. And he then chose to speak with the police. At that point, he chose to speak with the police. My point is, he wasn't advised that maybe you'd like to talk to counsel before questioning, and he can tell you whether or not this is a good idea. So, are we going to create another Miranda warning? I don't believe you have to characterize it as that, Your Honor. You just gave us one that would have to be added to the card. How many different cards are going to have to be printed? I don't think that you have to print another card, Your Honor. With all due respect, I think that this is the Sixth Amendment issue that the Supreme Court opened up in Montejo when they removed the bright-line rule of Michigan v. Jackson and said that you don't have to—it used to be that you couldn't approach a defendant when he had counsel appointed. Is he required to explain all the different ways in which counsel might be of benefit? At least two, because you would like to think that the Sixth Amendment protection has the same dignity as the Fifth Amendment protection, and not that there are some qualifications that lessen the effect of the Sixth Amendment relative to its cousins, the Fourth and Fifth Amendments. In other words, are there any qualifying rules that govern when a person's Fourth or Fifth Amendment right applies? I'm sorry, what are they supposed to say to him? They can say to him, not only do you have the right to have counsel present during questioning, you have, because you've been charged and we're at a critical stage of the offense, you have the right to counsel now, and maybe you want to talk with him before you decide to engage in questioning. So they should give him legal advice beyond the warning. That's what the Miranda warning is. The Miranda warning is legal advice that you may inculcate. Beyond the warning that we all know by heart from TV shows, beyond that, you want further explanations of what the lawyer might be able to do for him. There's a reason for that, because the Supreme Court at one point decided that you couldn't approach a person who's had counsel. They've removed that rule, and Justice Scalia says, well, now it's a case-by-case analysis. So if that's the Supreme Court's ruling, shouldn't there be a warning to the person that you have the Sixth Amendment right before you waive it? And this right is the court knows, but the prisoner doesn't know what's happening. Well, if it's a case-by-case analysis, that suggests that the district court actually plays a role in this. The district court held a suppression hearing, and as I understand it, it didn't find any of the statements involuntary. It found them involuntary, spontaneous, and the like. And if I accept your view that that's where we are, then we go into the realm of the fact-finder. Well, not exactly. With all due respect to the district court, Your Honor, I'm serious that at the district court level, Judge Spencer did not address the Sixth Amendment question, and counsel did make mention of it at pages 91 and 92 of the joint appendix. It says that I'm not just talking about Mr. Brown's Fifth Amendment right. We understand that was what was asserted earlier in the stages, but later, eight months later, six months later, when he was approached by the federal agent, the federal complaint took effect, there was the question of whether his Sixth Amendment right wasn't implicated because they approached him, that is, the original detective from the state, Detective Bellet, with the federal agent, using the information they had gleaned from the earlier interrogation, and tried to approach him again, and in fact successfully extracted more inculpatory statements with more detail. With additional Miranda warnings, but isn't that, doesn't the fact that some of these approaches were months apart cut against you? There's no concerted or concentrated approach. I mean, I think, what were there, six months apart, some of these approaches? As I stand before you in this courtroom surrounded by well-educated lawyers and very experienced lawyers, that would be the case. But we're talking about a person who has been sitting in jail for that period of time, knowing what the charges are, having somebody new tell him, now you have new charges, he believed he asked for a lawyer, what would make him think that he no longer has a lawyer? What would make him think that he has to waive his right? But it seems that you would want him to have the same protection before inculpating himself yet further. We appreciate it, sir. Thank you, Your Honor. You also have a minute for rebuttal, I think. Yes, sir. Mr. Siebert. You heard my question about the shooter. If it had been reversed, would that be okay? Well, we actually have another statement from Winston Oliver in this case where Mr. Brown was called the other person. That's a lot different than calling him the driver or the shooter, isn't it? Because those descriptors actually refer to behaviors that are material to the crime. Well, the Fourth Circuit case law and the Supreme Court case law on Bruton in particular, I would point to void, which uses the word client, which I think is similar in nature. But the pejorative term that's being used I don't think has anything to do with facial incrimination. He could either be a driver or not be a driver. He could be the shooter or not be the shooter. So I think that's the fundamental. So under your argument, because it doesn't facially incriminate anybody, if you say the shooter, that's okay too, right? Yes, Your Honor. All right. And I think the sole issue in this case that's raised by the defendants is linkage. And Richardson clearly says that linkage is allowed. You can bring in other evidence at trial to give the inference that this person was involved in the crime. It's the facial incrimination. And Richardson stands for that point. In Gray, the next case, the Supreme Court does not overrule that. It actually adopts that. The one part of Gray that bothers me in this context is Gray prohibits the use of nicknames. And I can certainly understand how a nickname wouldn't facially incriminate somebody. If somebody were named John Smith and his nickname were Hot Dog, and you put Hot Dog in the statement, that doesn't facially incriminate. It does not, Your Honor. Luckily, we did not use Hot Dog or any nickname in this case. We used the driver, which I noticed Judge Wilkinson talked about, that the jury's entitled to know that, one, Warren Brown was not the driver, and, two, two people did this crime because it's a conspiracy case. And Leidy, the Fourth Circuit case, talks about how it shouldn't be changing the tenor of the statement. And if we're taking out important facts such as there was a driver and that there was two people committed that crime, that fundamentally changes the statement. That's not what Warren Brown said in his statement. So I think that's important. Another thing I'd like to say when you have these brutal questions that in order to be fair to the non-testifying co-defendant, there has to be some resemblance between what the jury heard and what the non-testifying co-defendant actually said. Correct. I mean, there are two sets of rights here. There's the right to the confrontation clause. There's the right, you know, there's the Bruton right because of the absence of a cross-examination of Brown. He's not going to take the stand. And that's what Judge, I think it was Judge Spencer, made the substitution to try to protect the Bruton right. But then I think courts have also talked about the fact that the non-testifying co-defendant has every right to take the stand. He may face adverse evidence, and part of that adverse evidence may be the fact that the confession comes in. But he does have a right not to take the stand, and he doesn't forfeit his right that when the confession comes in, it bears some resemblance to what he actually said, because he's on trial too. Correct. Yes, I would agree 100%, Your Honor. And also I'd like to correct one interesting aspect to this. Judge Spencer actually suggested accomplice, which Mr. Oliver now claims he would like to have had. And without abandoning his motion to suppress and preserving that argument, the government, or I'm sorry, the Mr. Oliver's trial attorney said, propose driver. He's the one that actually proposed the term driver. The United States had asked for getaway driver, and he said, well, I'd prefer driver as opposed to accomplice or getaway driver. So I think that's also important that without abandoning his motion. Are you making a claim of invited error? No, Your Honor. Because he did consistently say throughout the transcript, I'm not waiving this, but in a practical sense I believe I'm going to lose this argument. So I want to propose instead of accomplice, driver. And the only reason I raise that is because in the defendant's brief, now he's claiming, well, accomplice is much more neutral, when in reality he's the one that proposed that. So and then one other point on Bruton, in terms of direct evidence linking Mr. Brown to the event, there's DNA evidence of him on the scene. There's the video, which I submitted to the court, which is pretty clear. And then the eyewitnesses that also. You're making a harmlessness argument. Yes, Your Honor. That's another. Any error is harmless. Did Mr. Edmund, what was his role in the trial? He'd been shot four times as the cashier. Was he well enough to attend the trial or to testify? Well, let me just correct one thing, Judge. He was not the cashier. He was the good Samaritan that came into the store, observed the robbery taking place, grabbed a beer bottle from the refrigerator, and smashed Mr. Brown in the head with the bottle. And then he was shot four times? Four times. He was shot in the head, the groin, the buttocks, and the shoulder. He had made a full recovery. The bullets are still in him. However, he did testify. All four of the bullets? His testimony, or at least he described that it would have hurt him more. The doctors said it would hurt him more to take it out than leave him in. So did he attend the trial? He testified at trial and sentencing. And then moving to the Fifth and Sixth Amendment violations, I'll tackle the Sixth Amendment first. I think Alvarado speaks clearly on this, that the Sixth Amendment is an offense-specific right. It can't be invoked for all future crimes. And federal and state crimes are separate offenses because of the separate sovereign issues. So the fact that Special Agent Unflint of the FBI took Mr. Brown into custody after his state charges were null prost, I think the Sixth Amendment right goes away and we start over. And then turning to the May 20th interview with Detective Ellett Mr. Brown, the way I understand the defendant's argument is that Detective Ellett tricked him or fooled him into making a statement, but that's very much different from how that happened. Mr. Brown went to Pamunkey Jail to get warrants, and that's where the magistrate sits. He just happens to sit in the same place where Mr. Brown was at. The magistrate's the one that suggested for Detective Ellett to serve the warrants on Mr. Brown that night. He brought him down. Mr. Brown was not awoken by anything. He was on the phone and admitted to it on his phone. Detective Ellett had later checked to confirm that he was on the phone at that time. Detective Ellett starts reading the charges to Mr. Brown. At no time during this whole sequence of events did the officer continue to question after he had invoked his right to silence, is that correct? This is the second instance. The first, May 19th, when Mr. Brown was arrested, Detective Ellett ceased any further questioning. Then comes May 21st, the next day, when he's going to serve the additional warrants on him. Mr. Brown initiated the further conversation. He specifically said that Detective Ellett had talked to his mother, that it was Winston Oliver's idea, not his, that the gun went off accidentally, not his. These are all statements that were spontaneous, that Detective Ellett was just there to serve these warrants on. Then Detective Ellett stopped him and said, look, you just invoked your right to counsel yesterday or the day before. We've got to get a room. I've got to remorandize you. So he brought him into a room. He did have a tape recorder on him because he's a detective that works around the clock. Went in, remorandized him. This is all on audio. Then Mr. Brown read and signed the waiver form, and then he gave his statement. The idea that there was some kind of trick or that Detective Ellett initiated this is flatly untrue. Mr. Brown initiated it, and that's clear from the record. I would cite the Joint Appendix 95 with Judge Spencer's findings, and also Detective Ellett's testimony, which is on Joint Appendix 57. So I think those actions by Detective Ellett show that the previous night, when he scrupulously honored his invocation and stopped questioning, shows that he took this seriously. Then when he came to serve the warrants on him, which falls under the Blake case, which is it's not an innes interrogation when you're serving charges. We've gone over a lot of this, but we understand your brief. Is there anything further that you have on this? No, Your Honor. Let me just see. Hold on a minute. I want to see if we have any further questions. We don't. Thank you, Your Honor. Okay. Mr. Collins. Thank you, Judge. I apologize to Mr. Sievert. Obviously he couldn't tell, but when I suggested in my brief, you might as well have used the term accomplice. That was somewhat tongue-in-cheek. While the defense attorney may eventually have said he preferred the term driver, he said he preferred the term driver to getaway driver or accomplice. He wasn't suggesting that that be the term used. While I certainly am not a fan of the Richardson decision, I don't think that's what we have here because even that decision, which says the redaction may solve the problem, requires a proper limiting instruction, and one was not given in this case. All right. Mr. Bodnar, you have a minute over bottle? Yes, Your Honor. I think I can say it in that time. Judge Goodwin asked an excellent question. Do we have to have an extra card to give these Sixth Amendment warnings? My response to suggest that would be all you really have to say is an additional warning. You have the right to be represented and consulted by counsel before you enter into questioning. That's all it has to say. And the reason I harp so much on this particular point is because you see these cases coming before the court with more frequency, and you know there's a split in the circuits. The Supreme Court has not decided it. This court, Your Honor, did decide it in Alvarado that there's a dual sovereign and you can receive these things without that kind of protection. But you're going to see more of these cases. They're going to continue to come because all these cases seem to have something in common, which is a state-federal cooperation. Not that there's anything wrong with that in the investigation, but it gets so murky that by the time the state prosecution is dropped and the federal prosecution takes off, the person has an attorney. He doesn't have an attorney. What is he supposed to do? What does he know at that point? For these reasons, I believe that the judge erred in failing to address the Sixth Amendment right. Thank you. Thank you. I'd like to, Mr. Collins and Mr. Bodnar, I'd like to thank both of you. You're court-appointed and you've certainly prepared your cases carefully and given a fine account of yourselves. I hope you'll accept the court's appreciation. Thank you.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Joseph R. Goodwin